

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SASO GOLF, INC., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 08 C 1110 ) |
| NIKE, INC., | ) Judge Blanche M. Manning ) Magistrate Judge Nan R. Nolan |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Saso Golf, Inc. has filed suit against Defendant Nike, Inc. alleging that its golf clubs infringe Saso Golf's patents in violation of 35 U.S.C. § 271. The case has been referred to this court for discovery supervision. Currently before the court is Nike's motion for leave to file a first amended answer, affirmative defenses and counterclaims. For the reasons set forth here, the motion is granted.

## BACKGROUND

Saso Golf filed this lawsuit on February 22, 2008, alleging that Nike's golf clubs infringe two of Saso Golf's patents: (1) U.S. Patent No. 5,645,495 ("the '495 patent"); and (2) U.S. Patent No. 6,620,055 ("the '055 patent"). Nike answered the complaint on April 11, 2008, and Saso Golf answered Nike's counterclaims on May 1, 2008. Shortly thereafter on May 7, 2008, the parties agreed to a joint scheduling order setting May 23, 2008 as "[t]he last date for the parties to seek leave of court to . . . amend the pleadings unless good cause is shown." (Initial Joint Status Report, Doc. 22.) The court adopted this schedule in an Order dated May 8, 2008. (Minute Order of 5/8/08, Doc. 23.)

The parties continued with discovery, and on January 9, 2009, Saso Golf voluntarily withdrew its assertion of the '495 patent. According to Saso Golf, its decision to withdraw the '495 patent was based on the fact that (1) the '495 patent and the '055 patent are related such that

Saso Golf need only prove infringement under one of the patents; and (2) Saso Golf wanted to relieve the court's and the parties' burden and simplify the case. (Pl. Resp., at 13.) Several weeks later on February 19, 2009, Nike sent Saso Golf a letter stating its intent to seek leave to amend its affirmative defenses and counterclaims. Saso Golf initially indicated that it would not oppose the motion. (Letter from M. Suri to E. Maurer of 2/26/09, Ex. C to Def. Reply.)

On March 9, 2009, Nike filed its motion for leave to file an amended answer. The purpose of the amendment is to add an affirmative defense of inequitable conduct relating to the '055 patent. Specifically, Nike contends that in prosecuting the '055 patent, Saso Golf's inventor, Mr. Mitsuhiro Saso, and his counsel intentionally and knowingly failed to disclose to the U.S. Patent and Trademark Office ("PTO") the following material information:

(1) Canadian Patent No. 899,928 (the "Carlino patent"), which the Canadian Patent Office relied on in rejecting Mr. Saso's '055 patent application in October 1998;

(2) two prior art Japanese publications, No. 01-256981 (the "Kajita I patent") and 03-070584 (the "Kajita II patent"), which the Japanese Patent Office relied on in rejecting Mr. Saso's application for the Japanese Equivalent to the '055 patent in March 1999;

(3) the existence of litigation relating to the subject matter of the '055 patent – i.e., Saso Grind Sports, Inc. sued Sumitomo Rubber Industry Co. ("SRI") in March 2001 alleging infringement of the Japanese Equivalent of the '055 patent (the "SRI Litigation"); and

(4) prior art references that SRI cited in defending the lawsuit, including U.S. Design Pat. Nos. 277,221 and 266,344; Japan Design Patent No. 685,605; and 1990 Golf Digest Extra Edition.

(Proposed First Amended Answer, Fifth Affirmative Defense.)

Nike claims that it "diligently analyz[ed] Mr. Saso's worldwide patenting efforts and the numerous foreign language documents and proceedings relating to Mr. Saso's worldwide patent portfolio," and did not learn facts supporting its inequitable conduct allegations until after it received Saso Golf's first document production on December 29, 2008. (Def. Mot., at 6.) Saso Golf disagrees, arguing that Nike deliberately and prejudicially waited to amend its pleadings until after

2

Saso Golf voluntarily withdrew the '495 patent because the inequitable conduct allegations relate only to the '055 patent. In Saso Golf's view, Nike has known the relevant facts to assert an inequitable conduct defense since at least July 24, 2008, and it should not be allowed to amend the pleadings at this late date.

## DISCUSSION

### A. Standard of Review

Nike has brought its motion for leave to amend pursuant to Federal Rule 15(a), which provides that such leave "shall be freely given when justice so requires," so long as there is no harm to the other party. FED. R. CIV. P. 15(a)(2); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *6 (N.D. Ill. Jan. 24, 2000). However, "once a Court issues a discovery schedule and the deadline to amend the pleadings has passed, the party requesting the amendment must satisfy the more exacting standard of Federal Rule 16." *Bridgeport Pain Control Ctr., Ltd. v. Cutera, Inc.*, No. 08 C 1116, 2009 WL 510888, at *1 (N.D. Ill. Feb. 26, 2009). Rule 16(b) states that in order to amend a pleading after the deadline set forth in the court's scheduling order, the moving party must show "good cause." FED. R. CIV. P. 16(b); *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005). The "good cause" standard "primarily considers the diligence of the party seeking amendment." *Trustmark Ins.*, 424 F.3d at 553 (internal quotations omitted).

### B. Analysis

Saso Golf argues that Nike has failed to satisfy Rule 16(b)'s good cause standard because it has not demonstrated an exercise of due diligence in pursuing its inequitable conduct defense. Saso Golf claims that Nike knew about the Canadian Carlino patent as of July 24, 2008; the two Japanese references as of April 21, 2006; the Japanese litigation as of March 23, 2007; and the Japanese litigation references soon after March 23, 2007. With respect to the Japanese litigation,

3

Saso Golf notes that it disclosed a prior lawsuit against Callaway Golf – *Saso Golf, Inc. v. Callaway Golf Co.*, No. 03 C 4646 (N.D. Ill.) – in February 2006, and the claim construction briefs in the *Callaway* case expressly disclosed the Japanese litigation. (Pl. Resp., at 6-9.) As Saso Golf sees it, Nike had all the data it needed to file an inequitable conduct defense many months ago, yet it strategically waited until after Saso Golf withdrew the '045 patent because now the defense may be dispositive of the entire case.

Nike concedes that it obtained the prosecution histories for the Japanese Equivalent and the Canadian patent on July 22, 2008 and July 24, 2008, respectively. Nike denies, however, that it knew about the other information until after those dates. Nike's timeline indicates that between July 24, 2008 and January 9, 2009, it obtained (1) an English translation of the prosecution history for the Japanese Equivalent; (2) the Appendix to Callaway's responsive brief to Saso Golf's proposed claim construction, which contained an English translation of the lower court decision in the SRI litigation which, in turn, was Nike's first confirmation that validity was at issue in that case; (3) an English translation of the higher court decision in the SRI Litigation; (4) English translations of non-patent literature prior art cited against the Japanese Equivalent in the SRI Litigation; (5) English translations of prior art cited in the prosecution history for the Kajita I and Kajita II patents; and (6) Saso Golf's privilege log from the *Callaway* case indicating that prosecution counsel on the '055 patent and counsel for Saso Golf knew of the existence of the SRI Litigation during prosecution of the '055 patent. (Def. Reply, at 4-6.)

Nike claims that "the pattern of Saso's intentional, selective disclosure of material information [to the PTO] was not apparent" until after December 2008, "when the undersigned counsel received and analyzed translations of the prior art cited in the Japanese prosecution history, the SRI Litigation, and Saso's Privilege Log from the Callaway case." (Def. Reply, at 6.) In Nike's view, it could not properly plead an inequitable conduct defense until it had this information.

4

Claims of inequitable conduct must be pled with a high level of particularity under Federal Rule 9(b). *Safe Bed Technologies Co. v. KCI USA, Inc.*, No. 02 C 0097, 2003 WL 21183948, at *2 (N.D. Ill. May 20, 2003). This means that "a party must allege the 'who, what, when and where' of the conduct, along with a general allegation of intent to deceive the PTO." *Id.* (quoting *Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc.*, 14 F. Supp. 2d 1046, 1049 (N.D. Ill. 1998)). The court is satisfied that Nike acted with due diligence in pursuing evidence related to an inequitable conduct defense and in seeking leave to file an amended answer consistent with the requirements of Rules 9(b) and 11. *See, e.g., Douglas Press, Inc. v. Tabco Inc.*, No. 00 C 7338, 2004 WL 1144054, at *1 (N.D. Ill. May 17, 2004) ("Allegations of inequitable conduct are serious and we cannot fault [the defendant] for waiting for further evidence before filing such an affirmative defense, especially keeping in mind Rule 11.")

In reaching this conclusion, the court notes that Nike has no objection to Saso Golf renewing its allegations of infringement as to the '495 patent. (Def. Reply, at 3.) This lends further support to Nike's showing that it did not deliberately wait to file an inequitable conduct defense until after Saso Golf withdrew the '495 patent. In addition, discovery is not set to close until August 14, 2009 and the parties have not yet taken any depositions. *Cf. Trustmark Ins. Co. v. General Cologne Life Reinsurance of America*, No. 00 C 1926, 2001 WL 1268539, at *14 (N.D. Ill. Oct. 22, 2001) (denying leave to amend where request was made more than nine months after the court's scheduling deadline and parties had already completed several depositions, including expert depositions); *SmithKline Beacham Corp. v. Pentech Pharmaceuticals, Inc.*, Nos. 00 C 2855, 00 C 5831, 2002 WL 1303137, at *2, 3 (N.D. Ill. June 13, 2002) (denying leave to amend under Rule 15(a) where motion was filed six weeks before the end of fact discovery and amendment would require second depositions of witnesses from Japan).

The court recognizes that the parties have submitted initial claim construction briefs for the '055 patent. To the extent the '495 patent is closely tied to the '055 patent, however, only limited

5

additional briefing will be required if the '495 patent is reinstated. The court agrees with Nike that the most efficient course is to address all of the claims at one time.

## CONCLUSION

For the reasons stated above, Nike's Motion for Leave to File its First Amended Answer, Affirmative Defenses, and Counterclaims [53] is granted. Saso Golf will tell Nike, in writing, by April 7, 2009 whether it intends to renew its allegations of infringement as to the '495 patent. Status hearing set for April 9, 2009 at 9:30 a.m. to discuss any necessary additional briefing for claim construction.

ENTER:

Dated: April 6, 2009

Nan R. Nolan
NAN R. NOLAN
United States Magistrate Judge