## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SASO GOLF, INC., | ) | |
| | ) | No. 08 C 1110 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| NIKE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Saso Golf, Inc. filed this lawsuit against Nike, Inc. to enforce Claim 7 of Saso's U.S. Patent No. 5,645,495 ('495 Patent).[1] The '495 Patent describes a golf club design that purports to improve the distance and accuracy of golf shots by shifting the club head's center of gravity away from the toe and toward the heel. R. 81, 1st Am. Compl. ¶ 6-10; R. 119, Claim Constr. Order at 1.[2] In November 2010, after extensive claim construction briefing by both sides, the previously assigned judge issued an order construing certain disputed terms contained in Claim 7 of the '495 Patent. Claim Constr. Order at 6-15. The parties now seek clarification and reconsideration of the Court's prior construction. For the reasons explained more fully below, the parties' motions for clarification [R. 123, 124] are granted.

---

[1]In this federal-question case, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[2]Citations to the docket are indicated by "R." followed by the docket entry.

## I. Background

In February 2008, Saso Golf filed a complaint against Nike, accusing Nike of producing and selling golf clubs that infringe Claim 7 of its '495 Patent. R. 1, Compl. ¶¶ 6-10. The '495 Patent describes a golf club designed to improve the distance and accuracy of golf shots using a novel back side profile shape to alter the location of the club head's center of gravity. R. 80, Saso's Claim Constr. Br. at 1. Although the '495 Patent applies to both irons and metal wood clubs, the present controversy concerns only Claim 7 of the patent, which applies to metal wood clubs. Claim Constr. Order at 1-2. Claim 7 of the patent describes a golf club comprising:

> a metallic wood type head including a cylindrical hosel portion formed integrally therewith;
>
> said metallic wood type head having a heel side and a toe side, said metallic wood type head having a hitting surface extending from the toe side to said heel side, the hitting surface having substantially the same curvature along a transverse direction as a longitudinal direction;
>
> said metallic wood type head further comprising a toe, a heel, and a back side profile shape extending from the toe side to the heel side, said back side profile shape between the toe and the most rearwardly point of said metallic wood type head having a radius of curvature that is larger than the radius of curvature of said back side profile shape between the most rearwardly point of said metallic wood type head and the heel.

R. 124-1, Saso's Exh. 1 ('495 Patent) at 13. At the core of the parties' dispute is the last paragraph of Claim 7. After considering each side's proposed claim constructions, the previously assigned judge issued an order construing the following disputed claim terms in the following ways:

1.  "Hitting surface" is the "face of the golf club head, *i.e.*, the surface of the head that makes contact with the ball during striking." Claim Constr. Order at 17.

2.  "Toe" refers to "the sidewall region of the club head (not including the face, or hitting surface) opposite the shaft, extending vertically from the sole to the top portion of the club head." *Id.*

3.  "Heel" refers to "the sidewall region of the club head (not including the face, or hitting surface) nearest the shaft end of the club head, extending vertically from the sole (the bottom of the club head) to the crown (the top portion of the club head)." *Id.* at 18.

4.  "Toe side" is the portion of the club head farthest from the shaft that includes the toe and extends from the toe to the vertical plane that is perpendicular to the hitting surface and intersects the club head at its most rearwardly point. *Id.* at 17.

5.  Likewise, "heel side" is the portion of the club head nearest the shaft that includes the heel and extends from the heel to the vertical plane that is perpendicular to the hitting surface and intersects the club head at its most rearwardly point. *Id.* at 16-17.

6.  "Back side profile shape" refers to the profile shape of the club head, as viewed from above, not including the hitting surface, but including the heel, the toe, and all points between them on the right side of the club head. *Id.* at 18.

7.  "Most rearwardly point" is the point on the sidewall of the club head most distant from the hitting surface, along a vertical plane perpendicular to the hitting surface. *Id.*

8.  "Golf club" means "a golf ball hitting implement having a head and a shaft that is suitable and intended for playing golf." *Id.* at 16.

9.  "Radius of curvature" means "radius of a substantially circular curve of a substantial portion of the back side profile shape." *Id.* at 15.

It is the last term, "radius of curvature," that continues to confound the parties. This is because the Court reasoned that, with respect to the radius of curvature, "[t]he only way . . . [to] make sense of the last paragraph of the Claim is to assume that the

back side profile shape on both the heel side and the toe side are parts of circles, each having only one radius." *Id.* at 14. The Court further explained that "[if] either [section of the back side profile shape] were part of a complex curve having many radii, then a person skilled in the art would be at a loss to determine which radii on the toe side should be compared to which radii on the heel side." *Id.* In light of that construction, the parties now cross-move for clarification of "radius of curvature" and the last phrase of Claim 7, which bears repeating:

> said back side profile shape between the toe and the most rearwardly point of said metallic wood type head having a radius of curvature that is larger than the radius of curvature of said back side profile shape between the most rearwardly point of said metallic wood type head and the heel.

'495 Patent at 13. Nike alternatively asks the Court to reconsider the prior rejection of Nike's argument that Claim 7 is too indefinite.

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). Thus, a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*,

906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). But a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal quotation marks and citation omitted).

In the context of claim construction, a motion for reconsideration may be raised at any stage of the case. *See, e.g.*, *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (after preliminary injunction ruling); *Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3023423, at *1 (N.D. Ill. July 30, 2010). Indeed, the Federal Circuit has noted that "[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Jack Guttman*, 302 F.3d at 1361 (citation omitted). Indefiniteness is a part of claim construction and can thus be revisited after a Markman hearing. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012) ("[I]ndefiniteness is a question of law and in effect part of claim construction.").

## III. Analysis

Both parties have moved for clarification of the prior claim construction order. Nike emphasizes the part of the order that describes the *circular* shape of the back side profile shape. Specifically, Nike argues that the meaning of "radius of curvature" should incorporate the limitation that "the back side profile shape on both the heel side

and toe side are parts of *circles*, each having only one radius." R. 123, Nike's Mot. Clarif. at 6-7 (emphasis added). In other words, the back side profile shape described in Claim 7 would have only two radii of curvature, so that the club head would look like quarters of two perfect circles—each having a different radius—placed together to form a sort of semi-circle. *See* Nike's Mot. Clarif. at 5, Illustration 2. Under this interpretation, Nike's golf clubs, whose back side profile shapes are defined by complex multi-radii curves, would not be infringing. In the alternative, Nike asserts that Claim 7 is indefinite because the prior order construed "radius of curvature" without requiring discrete locations or techniques for measuring the back side profile shape. *Id.* at 3. In other words, if radius of curvature does *not* mean the radius of a circle, then there is no definite way to measure the toe side back profile shape and the heel side back profile shape (and those measurements are needed in order to compare them against one another).

Saso, on the other hand, contends that the prior construction of "radius of curvature" is unambiguous, and should be read to require only that a *substantial* (not the entire) portion of each of the toe side and heel side curves be *substantially* circular. R. 124, Saso's Mot. Clarif. at 4.

The threshold question here is whether the Court, in arriving at its prior construction ruling, misunderstood a party, made an error of apprehension, or made a decision outside the adversarial issues presented so as to warrant reconsideration of "radius of curvature." *Bank of Waunakee*, 906 F.2d at 1191. Remember that the prior order construed "radius of curvature" to mean "radius of a *substantially circular* curve

6

of a substantial portion of the back side profile shape." Claim Constr. Order at 19 (emphasis added). This construction imposes a "substantially circular" limitation on the radius of curvature, but neither party proposed or advanced this limitation in their claim construction briefs. Indeed, Saso only argued that the *average* radius of curvature be taken when comparing the club head's two rear profile regions, but did not attempt to define "radius of curvature" itself. Saso's Claim Constr. Br. at 20-21. For its part, Nike offered no definition of "radius of curvature," and instead argued that the claim language contemplates measuring only a single (not average) radius of curvature. R. 79, Nike's Claim Constr. Br. at 25-26. Furthermore, Nike contended that because the profile shape of the patented club head is a complex curve, the claim language is insolubly ambiguous as to both *where* and *how* the single radius of curvature should be measured. *Id.* at 26. Thus, the prior order adopted a construction of "radius of curvature" without either party advancing the "substantially circular" interpretation. Although it is not unusual for a court to adopt an entirely separate construction from what is proposed in the Markman briefs, the parties did not have an chance to address whether such a construction is appropriate—at least until now.[3] Having now had the benefit of receiving briefing from both sides on the "substantially

---

[3]To be sure, it is *not* always the case that, when a court adopts a claims construction that differs from either side's proposals, a reconsideration motion is properly made. Sometimes the adopted construction will be sufficiently close to either proposal or sufficiently clear from the record that the parties will have had a fair shot at making their claims construction arguments. This is particularly true where, as it seems so often happens, the patent owner simply argues plain meaning (or offers unilluminating synonyms for the claim terms) and the accused infringer simply argues indefiniteness, and neither side makes a back-up argument to address other possible constructions.

circular" limitation, the Court is now primed to reconsider the construction. Accordingly, the motions to reconsider the proper construction of "radius of curvature" and the last phrase of Claim 7 are granted.

The question now is whether the prior construction of "radius of curvature" reflects the ordinary and customary meaning that the term would have to a person of ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (citations omitted). As mentioned above, the prior order explained the "substantially circular" limitation to mean that the back side profile shape on both the heel side and toe side are parts of circles, each having only one radius. Claim Constr. Order at 14. The Court imposed this limitation as "[t]he only way . . . [to] make sense of the last paragraph of the Claim," because "[if] either [section of the back side profile shape] were part of a complex curve having many radii, then a person skilled in the art would be at a loss to determine which radii on the toe side should be compared to which radii on the heel side." *Id.* at 14. But, try as it might, the Court cannot now square the "substantially circular" limitation with the patent specification and the record evidence for three reasons.

*First*, by requiring the entire respective toe side and heel side back side profile shapes to be perfectly circular—that is, having only one radius of curvature (or being so close to perfectly circular that it essentially has only one radius of curvature)—the construction reads out the preferred embodiment of the '495 Patent. As illustrated in Figure 1 of the '495 Patent, the back side profile shape of the patent's preferred embodiment is not perfectly circular, but rather outlines a complex curve with multiple

radii of curvature. *See* '495 Patent at 2, Fig. 1. This stands in stark contrast to the club head contemplated by the prior construction, as illustrated in Nike's Illustration 2. Nike's Mot. Clarif. at 5, Illustration 2. A comparison of these two club heads is shown below:



Figure 1: '495 Patent's preferred embodiment

Illustration 2: Summary of prior construction of Claim 7

Courts, generally speaking, should not interpret a claim term in a way that excludes the preferred embodiment from the scope of the invention. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("[W]e . . . should not normally interpret a claim term to exclude a preferred embodiment." (citation omitted)); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (stating a construction that excludes the preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support"). Patents must adequately

describe the invention, and showing and describing the preferred embodiment is one of the ways that a patent can do that. To be sure, this is not to say that a claim construction can never exclude the preferred embodiment. Indeed, courts have interpreted claims to exclude embodiments of the patented invention where those embodiments were clearly disclaimed in the specification, *see SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001) (excluding subject matter from claim scope based on clear disclaimer in the specification), or prosecution history, *see N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345-46 (Fed. Cir. 2005) (excluding from claim scope certain embodiments in drawings based on disclaimer during prosecution). Here, however, there is nothing in the patent specification or prosecution history suggesting that Saso intended to disclaim the preferred embodiment illustrated in Figure 1. Accordingly, the presumption that the '495 Patent covers the disclosed embodiment has not been rebutted, and the prior construction cannot stand.

*Second*, the prior construction of "radius of curvature" does not make sense grammatically when read in the context of the rest of Claim 7. The best way to illustrate this is to insert the prior construction—"radius of a substantially circular curve of a substantial portion of the back side profile shape"—every time "radius of curvature" appears in the last phrase of Claim 7. So, as modified by the prior construction, the last phrase of Claim 7 reads:

> said back side profile shape between the toe and a most rearwardly point of said metallic wood type head having a *radius of a substantially circular curve of a substantial portion of the back side profile shape* that is larger than the *radius*

> *of a substantially circular curve of a substantial portion of the back side profile shape* of said back side profile shape between the most rearwardly point of said metallic wood type head and the heel.

Not only does the prior construction of "radius of curvature" render this phrase a mouthful, it simply does not make sense. Thus, the prior construction cannot reflect what a person of ordinary skill in the art would have understood "radius of curvature" to mean.

*Third* and most importantly, the prior construction was premised on the idea that a "radius of curvature" can only be measured for a perfectly circular curve. But "radius of curvature" is a defined mathematical term determined by a defined formula that can be applied to any curve, whether perfectly circular or complex, and need not be construed separately as a claim term of the inventor's making, nor as a claim term that then dictates how the back side profile shape looks.[4] Nike argued in its opening claim construction brief that "radius of curvature" can only mean a single radius and not an average, because the U.S. Patent and Trademark Office supposedly had specifically considered and rejected claims that cover an average radius of curvature in the prosecution history of Saso's related '055 Patent. Nike's Claim Constr. Br. at 26-27. But a closer inspection of the '055 file history reveals that the Patent and Trademark Office did not explicitly reject a construction using the average radius of

---

[4] *See Radius of Curvature (applications)*, http://en.wikipedia.org/wiki/Radius_of_curvature_(applications) (last visited Sept. 5, 2013); *see also Radius of Curvature*, http://www.intmath.com/applications-differentiation/8-radius-curvature.php (last visited Sept. 5, 2013).

curvature. Rather, the Patent and Trademark Office took issue with Saso's attempt to assign specific *values* to the relative proportions between the different radii of curvature,[5] not with the purported fact that an average radius of curvature was impossible to measure. *See* R. 79-10, Exh. 7B ('055 File History) at NIKE-SASO 0000568; *see also id.* at NIKE-SASO 0000565 (rejecting Claim 17, which stated, "[T]he radius of curvature . . . head is about 1.3 times larger than the average radius of curvature of the back side profile . . . .").

Nike separately argued that Claim 7 could not describe an average radius of curvature because the patent is unclear as to how to perform such a measurement, Nike's Claim Constr. Br. at 25-26, but Saso did present some evidence in its Markman briefs that an average radius of curvature could conveniently be calculated for a complex curve. *See* R. 97-2, Myrhum Rep. ¶ 18b (noting that, in 1991, it was common for one skilled in the art to be able to measure the back side profile shape using a plurality of radius gauges well known to the golf industry or to use a computer CAD drawing of the top rear profile shape to obtain the desired measurements); *see also id.* ¶¶ 16-77. Although Saso's evidence falls short of explicitly establishing that an ordinarily skilled artisan would have understood the claim language to require taking an average radius of curvature, that is not enough to invalidate the claim on indefiniteness grounds. Indeed, patents benefit from a statutory presumption of validity that can only be overcome by clear and convincing evidence that a skilled

---

[5]The examiner rejected the attempt to assign specific values because they were not disclosed in the originally filed disclosure. *See* R. 79-10, Exh. 7B at NIKE-SASO 0000565.

artisan could not discern the boundaries of the claim. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "Claims are not indefinite merely because they present a difficult task of claim construction." *Id.* Thus, "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree . . . the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (citations omitted). Here, because taking an average radius of curvature is both feasibly calculated by the skilled artisan and was not explicitly rejected by the Patent and Trademark Office, the "radius of curvature" must refer to an average radius of curvature of a complex curve. Given the language of the claim, the preferred embodiment, and the record evidence, the Court concludes that the prior construction of "radius of curvature" does not reflect the understanding of a person of ordinary skill in the art. Instead, the term "radius of curvature" would have been understood by a skilled artisan to constitute not a single-radius measurement of perfectly circular toe and heel side curves, but rather the average radius of curvature of the complex curves that form the toe and heel sides of the back side profile shape.

Having established that "radius of curvature" must be an average measured along a complex curve, the question becomes *where* the radius of curvature should be measured. Claim 7 requires a comparison of the radii of curvature of two segments of the back side profile shape—namely, the radius of curvature of the back side profile shape between the toe and the most rearwardly point, and the radius of curvature of

13

the back side profile shape between the most rearwardly point and the heel. Thus, the relevant locations for purposes of measuring the radius of curvature are the toe, the heel, and the most rearwardly point. Nike correctly points out that, without the almost-perfect-circles construction, the radius of curvature measurements of the back side profile shape necessarily depend on identifying exact locations of the toe, heel, and most rearwardly point. Nike's Mot. Clarif. at 9. And to put it even more precisely, it is necessary to pinpoint *from where* on the toe and heel is the curvature radius measured; it is a given that the most rearward point is one point on the back side profile shape from where the measurement is made, but for the other point, where is that on the toe and heel? Remember that a radius of curvature is a measurement at a specific point along a curve.[6] When that curve is perfectly circular, the radius of curvature will be the same regardless of which point along the curve one chooses to measure the radius of curvature. But when the curve is complex, the radius of curvature will vary depending on which point along the curve the measurement is taken: the radius of curvature will be greater where the curve is flatter, or smaller where the curve is more concave.[7] Thus, the radius of curvature of a complex curve necessarily requires taking an average of the radii of curvature along the complex curve. Moreover, the relevant curve must be bounded by end points—otherwise, it would be impossible to determine where

---

[6] *See Radius of Curvature (applications)*, http://en.wikipedia.org/wiki/Radius_of_curvature_(applications) (last visited Sept. 5, 2013).

[7] *See Radius of Curvature*, http://www.intmath.com/applications-differentiation/8-radius-curvature.php (last visited Sept. 5, 2013) (interactive demo).

to stop measuring, and whether a golf club's back side profile shape is infringing on the claimed invention.

Having concluded that the term "radius of curvature" does not dictate that the back side profile shape constitute a perfect circle (whether on the toe or heel side), and having concluded that the *average* radius of curvature of the respective back curve profile shapes can only be measured using end points, the Court now turns to pin-pointing the exact location of the "toe," "heel," and "most rearwardly point." The prior order construed "most rearwardly point" as "the point on the sidewall of the club head most distant from the hitting surface, along a vertical plane perpendicular to the hitting surface." Claim Constr. Order at 18. There is nothing in the reconsideration motions to overturn this construction, so the Court accepts it.

But what of the "toe" and the "heel"? Remember that the radius of curvature is measured along the back side profile shape *between* the *toe* and the most rearwardly point and *between* the *heel* and the most rearwardly point. The prior construction interpreted both "toe" and "heel" not as specific *points*, but rather as *regions* on the club head. "Toe" was construed as "the sidewall region of the club head (not including the face, or hitting surface) opposite the shaft, extending vertically from the sole to the top portion of the club head," while "heel" was construed as "the sidewall region of the club head (not including the face, or hitting surface) nearest the shaft end of the club head, extending vertically from the sole (the bottom of the club head) to the crown (the top portion of the club head)." *Id.* at 17-18. Although the grounds for these constructions are not explicitly stated in the prior order, the constructions match with Saso's

15

proposals, which were themselves drawn from the expert report of golf-club designer Mark Myrhum. Moreover, the patent itself does refer to "toe" and "heel" as if they are regions, not just specific points. '495 Patent, col. 3, ll. 1-7 (describing the invention's weight shift from "the conventional toe-heel balance"), col. 4, l. 19 (weight distribution "leans toward the shaft area rather than the toe area"). And there was no competing construction because Nike did not propose a construction, thinking that the terms are too indefinite and thus the patent is invalid. The prior order did note the high burden of proof required to invalidate a patent for indefiniteness, and the order rejected Nike's invalidity argument.[8] Claim Constr. Order at 5-6.

Against those constructions, Nike previously argued, among other things, that toe and heel are indefinite. In the reconsideration motion, Nike contends that the prior order overlooked the specific arguments for indefiniteness. First, Nike argues that, during the prosecution history of the continuation '055 Patent, Saso's own expert, Robert Hesser, used what he called a toe "point" and a heel "point" when he calculated average radii of curvature between those points and the most rearward point. R. 79-13, Hesser Decl. ¶ 7(f), at NIKE-SASO 0000765-66. True, but all that shows is that a point

---

[8]In some cases, accused infringers who make an indefiniteness argument (or some other validity argument) ought to seriously consider proposing a construction in the alternative. Where an indefiniteness argument is rejected, a court can be left at sea in the remaining task of picking through reasonable competing constructions (or left with only the inventor's potentially very aggressive construction). Perhaps accused infringers are concerned that making an argument in the alternative is—in effect—conceding that there is a reasonable, non-indefinite construction. But in other types of cases involving interpretive tasks, courts routinely consider alternative arguments as just that—alternatives—without hurting the party's primary argument (*e.g.*, a statutory interpretation case presenting a plain-language primary argument and a resort to structure, context, or legislative history if needed to interpret the non-plain text).

on the toe and a point on the heel is required to delimit the relevant part of the back side profile shape (the most rearward point being the other point). There is nothing in the Hesser Declaration that can be reasonably read to limit "toe" or "heel" to a point, rather than a region. Instead, Hesser used "point" to describe the point on the toe or heel from where the radius of curvature measurement would be taken (again, the other endpoint being the most rearward point). Indeed, in the preceding sub-paragraph of Hesser's declaration, Hesser again described measuring a radius of curvature, and this time he worded the relevant part of the profile shape as the "section intermediate the toe and the most rearward point" without using the phrase "toe point." *Id.* ¶ 7(e), at NIKE-SASO 0000765. Of course perfect consistency and perfect clarity are the ideals in patent drafting and patent prosecution,[9] and no doubt this patent could have been drafted much more clearly, but it demands too much to pick apart the Hesser Declaration in this way.[10]

In another indefiniteness argument based on prosecution history, Nike contends that the prior order overlooked the definition of toe and heel in another patent cited against the '495 Patent. Specifically, Nike points out that the Hodge 3,595,577 patent was cited against '495, and in '577, toe and heel are defined to be a point, specifically,

---

[9]Nike's arguments about the patent's purported internal inconsistencies, R. 123 at 13-15, suffer from the same level of too-exact scrutiny.

[10]Relatedly, Nike also argues that the prior order overlooked another part of file history where the examiner said that there is a "segment" or "section" that comprises the club's toe and heel, but that is consistent with the toe and heel being regions rather than specific points. The question remains what point on the toe and heel is the delimiter (really, what does it mean to be *between* the toe (or heel) and the most rearward point).

the corners of the club head's hitting face. *See* R. 79-14 at NIKE-SASO 0000885. But the '577 Patent described an invention that was focused on allegedly novel features of the striking face (and the shaft's center of gravity relative to the head's), and was not concerned with the head's back side profile shape. The '577 definition that Nike cites described the rim of the head as "extending around the rear of the head from the outer edge or the toe *of the striking face* . . . to the heel *of the head*." R. 79-14 at NIKE-SASO 0000885, col. 2, ll. 29-33 (emphases added). So Nike is relying on descriptions that are specific to the striking face and to the head, not a back side profile shape, and in a patent that did not really care about that shape. This is not nearly enough to be clear and convincing evidence of indefiniteness.

Moving beyond prosecution history, Nike also argues that the prior order overlooked other evidence of indefiniteness. Nike cites to a widely used textbook on golf-club design authored by Ralph Maltby; the Rules of Golf; and the declarations of experts Maltby, Tom Stites, and Jack Hu. Nike's Mot. Clarif. at 11-13. Some of these citations define toe as a point and heel as an area, and the experts say that there was no generally accepted definition. But these extrinsic references do not meet the clear-and-convincing burden needed to invalidate the patent. The textbook citations are just to the glossary of the textbook, shorn of the context of the '495 Patent and its radii of curvature comparison. The definitions in the Rules of Golf suffer from the same problem; the citation is focused on the overall dimensions of the club head, and indeed the citation describes the "outermost points" of the heel and the toe, R. 79-20 at NIKE-SASO 0005394, which suggests that the heel and toe themselves are not points but

18

regions. And the expert declarations are not so clear and convincing that they override the '495 Patent's references to region and Saso's own expert declaration, as explained above.

So, although radius of curvature has been reconstrued by this order and the almost-circular construction is rejected, the prior order's constructions of "toe" and "heel" remain standing. It is worth noting here that the prior order's construction of "back side profile shape" also survives. The prior order construed that term to mean "the profile shape of the club head, as viewed from above, not including the hitting surface, but including the heel, the toe, and all points between them on the right side of the club head." Claim Constr. Order at 10-11. During the claims-construction briefing, Saso essentially argued that the back side profile shape, for purposes of measuring the radius of curvature, extends from the toe side to the heel side, but does *not* encompass the *entire* extent of the back side profile. But the prior order rejected Saso's gloss on "back side profile shape" because there is no basis in the claim language or intrinsic evidence for Saso's proposed locations of the back extents of the heel and toe. *Id.* at 10. According to Saso, the back extents of the toe and heel are delimited by a line drawn at a 45° angle from the club's target line to the back side curve. Saso's Claim Constr. Br. at 18, Fig. 3. As the prior order pointed out, Saso offered no real basis for using this 45° limitation, and instead cited to unrelated patents, which have no bearing on how a skilled artisan would have interpreted the '495 Patent's claim language. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 (Fed. Cir. 2007)

19

(citation omitted). So the construction of "back side profile shape" remains in place as well.

With all that in mind, a claims-construction question still needs an answer, as noted above. Remember that the claim at issue tells the public to compare the radius of curvature of the "back side profile shape between the toe and a most rearwardly point" and the "back side profile shape between the most rearwardly point . . . and the heel." To repeat, from *where* on the toe and the heel does one measure the back side profile shape to the most rearward point? Perhaps the *edge* of the toe or heel closest to the most rearward point is the proper point. Or perhaps it is the center point of the toe or heel (as viewed along the back side profile shape), meaning the halfway point of the toe's or heel's length (again, viewed along the back side profile shape). Is it some other point? Or is this where the patent becomes too indefinite to construe? Rather than try to answer these questions without the benefit of the parties' views, the Court orders each side to file position papers on the issue.[11] The position papers should explain, of course, the evidentiary basis for their respective positions, and why skilled artisans would adopt those proposed points (and Nike may argue that, even given the still-surviving constructions of toe, heel, and back side profile shape, the from-where point is too indefinite). Saso must file its position paper by September 23, 2013. Nike may

---

[11]Neither party fully briefed these issues during the claim-construction phase. Nike argued only indefiniteness, and did not argue in the alternative. Likewise, Saso relied on the 45-degree delimiters for back side profile shape, and did not argue in the alternative on the assumption that back side profile shape would include the entirety of the back side profile.

respond by October 14, 2013. Saso may file a reply on October 21, 2013. The status hearing of October 23, 2013 is reset to November 6, 2013, at 9 a.m.

## IV. Conclusion

For the reasons explained above, the parties' cross-motions for clarification [R. 123, 124] are granted. But the parties must submit position papers as described above.


ENTERED:


    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge


DATE: September 9, 2013